UNITED STATES of America, Appellee,

v.

Sandro MARTINEZ, Defendant, Appellant.

No. 97–2350.

United States Court of Appeals, First Circuit.

Heard May 26, 1998.

Decided June 2, 1998.

Edward F. St.Onge on brief, for appellant.

Sheldon Whitehouse, United States Attorney, Margaret E. Curran and Kenneth P. Madden, Assistant United States Attorneys, on brief, for the United States.

Before SELYA, Circuit Judge, BOWNES, Senior Circuit Judge, and BOUDIN, Circuit Judge.

SELYA, Circuit Judge.

Defendant-appellant Sandro Martinez pled guilty to a single count of possessing a controlled substance with intent to distribute. *See* 21 U.S.C. § 841(a)(1) (1994). The district court found that the substance in question comprised 131.40 grams of cocaine base and 9.43 grams of powdered cocaine. The court then determined that the cocaine base was crack cocaine, *see United States v. Martinez*, 981 F.Supp. 726, 727 (D.R.I.1997), and sentenced Martinez to 121 months in prison. Martinez appeals, contending that the government failed to prove that the 131.40

grams of cocaine base was in fact crack cocaine.

■ We need not tarry. In *United States v. Robinson*, 144 F.3d 104 (1st Cir.1998) [No. 97–2185], we rejected an almost identical challenge. *See id.* at 107–10. We held squarely that, once the government laid a proper foundation "by introducing a chemical analysis ... proving that, chemically, the contraband was cocaine base," *id.* at 109, no further scientific evidence was needed. Instead, the government could bridge the evidentiary gap between cocaine base and crack cocaine by presenting lay opinion evidence (or an opinion proffered by an expert who possessed practical as opposed to academic credentials) from "a reliable witness who possesses specialized knowledge" (gained, say, by experience in dealing with crack or familiarity with its appearance and texture). *Id.* at 108–09. These precepts are controlling here.

To be sure, there is one arguably significant difference between *Robinson* and the case at bar: Martinez posits that the government introduced "[n]o testimony ... as to the water solubility or the melting point" of the confiscated contraband. Brief for Appellant at 5. That statement is true as far as it goes, but it does not take Martinez very far. Both solubility and melting point constitute ways of distinguishing *between* cocaine powder (which is water-soluble but has a relatively high melting point and therefore cannot be smoked) and cocaine base (which is not water-soluble and which can be smoked because it has a lower melting point). *See Robinson*, 144 F.3d at 108; *United States v. Booker*, 70 F.3d 488, 491 (7th Cir.1995), *cert. denied*, 517 U.S. 1111, 116 S.Ct. 1334, 134 L.Ed.2d 484 (1996). Neither characteristic is of assistance, however, in distinguishing *among* forms of cocaine base. As we wrote in *Robinson*, 144 F.3d at 108–09: "Chemical analysis cannot distinguish crack from any other form of cocaine base because crack and all other forms of cocaine base are identical at the molecular level. Thus, no further scientific testimony would have been of any conceivable assistance, and we will not re-quire the government to indulge in an empty exercise."

■ In this case, as in *Robinson*, the government adduced competent scientific evidence—namely, the testimony of Gino Rebussini, a chemist—to prove that the 131.40 grams of contraband associated with the appellant's arrest was cocaine base. Given the witness's qualifications, his opinion constituted competent proof of the fact that the substance was cocaine base. That further tests could have been conducted, but were not, goes to the weight of the evidence, not to its admissibility. *See, e.g., United States v. Bonds*, 12 F.3d 540, 561 (6th Cir.1993); *Christophersen v. Allied–Signal Corp.*, 939 F.2d 1106, 1109 (5th Cir.1991). Factors such as water solubility and melting point, thereafter raised by the defendant, went to the weight of the government's evidence, not to its admissibility.

That ends the matter. Once the government adduced Rebussini's testimony, no additional scientific evidence was exigible. From that point forward, as in *Robinson*, competent lay testimony, remarking the substance's distinctive appearance and texture and identifying it as crack, forged the final link in the evidentiary chain.

We need go no further. In *Robinson*, we said that "[o]n the strength of [such] proof, and in the utter absence of any controverting evidence," the district court's finding "easily survive[d] clear-error review." *Robinson*, 144 F.3d at 109. The same is true in this case.

*Affirmed.*