# United States Court of Appeals
## For the First Circuit

No. 05-1991

UNITED STATES OF AMERICA,

Appellee,

v.

GARY A. SAGENDORF,

Defendant, Appellant.

APPEAL FROM
THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Selya, Circuit Judge,
Stahl, Senior Circuit Judge,
and Lynch, Circuit Judge.

Timothy G. Watkins, on brief for the appellant.
Paul G. Levenson, Assistant United States Attorney, and
Michael J. Sullivan, United States Attorney, on brief for the
appellee.

April 20, 2006

**Per Curiam**.  Defendant Gary Sagendorf was found guilty, after a jury trial, of trafficking in counterfeit goods (i.e., counterfeit "Stolichnaya" vodka) in violation of 18 U.S.C. § 2320.  At his original sentencing, which occurred before the Supreme Court issued its decision in United States v. Booker, 543 U.S. 220 (2005), the primary issue in dispute was whether or to what extent Sagendorf's sentence should be enhanced under USSG § 2B5.3 based on the "infringement amount." The district court ultimately enhanced the sentence 12 levels on that ground and sentenced Sagendorf to the bottom of the resulting guideline range, i.e., 41 months.

Sagendorf appealed from his sentence (but not his conviction).  His brief challenged his sentence on two grounds: (1) that the district court committed a guidelines interpretation error in calculating the infringement amount and (2) that he was entitled to resentencing under Booker, which had come down after sentencing but before appellate briefing. After Sagendorf filed his brief but before the government responded, Sagendorf filed an unopposed motion to withdraw his brief and remand the case to the district court for resentencing.  In that motion, Sagendorf expressly "agree[d] to withdraw his appeal and to abandon his claim that the district court incorrectly calculated the Sentencing Guidelines."  In so doing, Sagendorf expressed his understanding "that if this

-2-

Court remands the case as requested in this motion, the district court will be permitted to determine whether Sagendorf's sentence should be reduced in light of the Supreme Court's decision in Booker and the sentencing goals set out in 18 U.S.C. §3553(a) and will use its computation of the guideline sentencing range as advisory." Sagendorf also expressly stated that he "underst[ood] that the district court is not obligated to alter the sentence on remand, and may re-impose the sentence that is the subject of this appeal." "In accordance with" Sagendorf's motion, we remanded the case for resentencing.

The sentence imposed on remand was identical to that imposed under the mandatory guidelines. In appealing the reimposed sentence, Sagendorf challenges it both as unreasonable under Booker (because the district court purportedly gave presumptive weight to the guidelines) and as based on an incorrect calculation of the guideline sentencing range. Given the course of events described above, we conclude that Sagendorf waived any argument that the guideline calculations were incorrect. See United States v. Rodriquez, 311 F.3d 435, 437 (1st Cir. 2002) (finding it "difficult to conceive of a more conspicuous example of a knowing and voluntary abandonment of a legal right" than when "[a] party identifies an issue, and then explicitly withdraws it").

-3-

"Although an appellate court has discretion to excuse waiver 'in the interests of justice,'" Olsen v. United States, 414 F.3d 144, 154 (1st Cir. 2005) (quoting Thomas v. Arn, 474 U.S. 140, 155, & n.15 (1986)), we see no reason to do so here.

We therefore turn to Sagendorf's only remaining claim: that, by re-imposing the 41-month sentence (rather than the 13-month sentence that Sagendorf sought), the district court treated the guideline sentencing range as "presumptive." If so, that would be inconsistent with this court's recent decision in United States v. Jiménez-Beltre, 440 F.3d 514, 518 (1st Cir. 2006), in which we declined to view the guidelines, post-Booker, as "presumptively controlling."[1] We disagree, however, with Sagendorf's characterization of the district court's methodology. Our own review of the record leads us to conclude that the district court's consideration of the guideline sentencing range, in conjunction with the other relevant statutory factors, was fully consistent with the standards articulated in Jiménez-Beltre.

In support of his argument, Sagendorf points to one of the general principles that the court indicated that it would follow in "consulting the guidelines" post-Booker. In

---

[1]Sagendorf's suggestion that the guideline sentencing range be given equal weight with the other statutory factors also has been foreclosed by Jiménez-Beltre, 440 F.3d at 518, as has the government's argument that this court lacks jurisdiction to review a within-guidelines sentence at all, id. at 517.

that general context, the district court did state its tentative view that "relying on grounds that would not justify a guidelines departure to impose a nonguideline sentence is inherently suspect . . .[,] [s]o the burden of persuasion will be high for someone seeking to persuade me to agree to a shadow departure where a departure in the sunlight would be unjustified." Regardless of whether that particular statement, standing alone, accurately states the law--a matter on which we take no view--it was tempered, in context, by the countervailing principle that "consultation of the guidelines must be qualified by the reality that the guidelines . . . necessarily remain general and categorical to a significant degree," as well as by the principle that the court's approach "cannot be so . . . slavishly compliant as to constitute effective submission to the guidelines, thereby reviving in them a de facto mandatory quality." Those principles presaged our similar statements in Jiménez-Beltre. See, e.g., 440 F.3d at 518 ("the guidelines are still generalizations that can point to outcomes that may appear unreasonable to sentencing judges in particular cases"); id. (declining to view the guidelines as "'presumptively' controlling or a guidelines sentence as 'per se reasonable'" because doing so "tends in the direction [of making them mandatory]").

Perhaps more important, whatever the merit of the judge's general reference to "shadow departures," that was not the basis for the district court's decision in this case (and, so, it is not the focus of our review). Here, the district court based its decision not to impose a below-guidelines sentence primarily on the principle that to do so simply because the guideline sentencing range for this offense "seems high" would be "willfully idiosyncratic" or, in other words, "a judge-by-judge recalibration of the guidelines," which would constitute a "serious mistake." That principle is consistent with this court's later warning that, in the post-Booker world, "sentencing decisions must be done case by case and must be grounded in case-specific considerations, not in general disagreement with broad-based policies enunciated by Congress or the [Sentencing] Commission, as its agent." United States v. Pho, 433 F.3d 53, 65 (1st Cir. 2006).

In applying that principle to this case, the district judge asked whether the previously calculated guideline sentencing range "seem[s] high because of something unique or specific to this case or because [he] generally regard[s] the calibration of guidelines ranges to be set higher than [he] would set them if [he] had the freedom and authority to do so." He then proceeded to answer that question by consulting the relevant factors set forth in 18 U.S.C. § 3553(a).

As to the nature and circumstances of the offense, id. § 3553(a)(1), the court considered the offense a serious one, "committed over an extended period of time with planning and effort[,] . . . not a crime of momentary weakness or a crime of opportunity, but a deliberate criminal project." As to how that seriousness was quantified, the court indicated that "many of the close questions in that calculation were resolved in the defendant's favor," and that alternative calculations would have resulted in an even higher sentence. As to deterrence, id. § 3553(a)(2)(B), the court concluded "that adequate general deterrence requires a penalty that reflects the seriousness of the offense, even if specific deterrence might be satisfied with a lesser penalty." As to the history and characteristics of the defendant, id. § 3553(a)(1), which, the court acknowledged, "are in [Sagendorf's] favor,"[2] the court concluded that Sagendorf's lack of a criminal history was already taken into account by placing him in criminal history category I for purposes of computing his guideline sentencing range.

---

[2]Sagendorf points to that acknowledgment as illustrating the excessive weight given to the guidelines relative to the other statutory factors. However, "the requirement that the sentencing judge consider a § 3553(a) factor that may cut in a defendant's favor does not bestow on the defendant an entitlement to receive any particular 'credit' under that factor." United States v. Fernandez, 2006 WL 851670, at *12 (2d Cir. Apr. 3, 2006).

On the basis of the totality of these factors, as well as consultation of the guidelines, the court concluded that its "sense that the sentence previously imposed seems high derives not from factors specific to this case that distinguish it in its seriousness from other possible cases of purveyors of counterfeit goods and marks where there was an intended loss of about $300,000, but rather from a more generalized view of the guidelines ranges." Accordingly, the court reimposed the same 41-month sentence, which it deemed, "under all the circumstances[,] reasonable and just."

Because the district court's explanation for that sentence is "plausible," Jiménez-Beltre, 440 F.3d at 519, and the resulting sentence is, at the very least, "defensible," id., we decline to second-guess the district court's judgment. Accordingly, we affirm the sentence.

Affirmed.