# United States Court of Appeals
## For the First Circuit

No. 05-2170

UNITED STATES OF AMERICA,

Appellee,

v.

GILBERTO BROWN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Steven J. McAuliffe, U.S. District Judge]

Before

Torruella, Lynch and Lipez,
Circuit Judges.

Bjorn Lange, Assistant Federal Public Defender, Federal Defender Office, for appellant.
Mark E. Howard, Assistant United States Attorney, with whom Thomas P. Colantuono, United States Attorney, was on brief, for appellee.

June 13, 2006

**TORRUELLA**, **Circuit Judge**. Following a two-day trial, a jury convicted defendant-appellant Gilberto Brown ("Brown") of two counts of distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1). Brown was sentenced to 70 months' imprisonment. The district court based the sentence on a finding that the substance Brown distributed was crack cocaine and that, given the nature of his offense and his criminal history, 70 months was a reasonable sentence to impose. Brown now challenges both his conviction and sentence. After careful consideration, we affirm.

## I. Background

Brown was arrested after an investigation in which he made two drug sales to government informant Steven Rheaume ("Rheaume"). Rheaume initiated the purchases from Brown in January and February 2004. On both occasions, Rheaume called Brown's cellular phone to arrange the deal at a specific gas station. Drug Enforcement Administration ("DEA") officers recorded the calls and subsequently observed a beige Kia Sephia, registered to Brown, leave Brown's apartment and return shortly thereafter. Rheaume was driven to the meeting place in a van by Detective Mark Newport ("Detective Newport") of the Portsmouth Police Department. On both occasions, the same beige Kia identified at Brown's apartment pulled into the gas station in front of the van. Detective Newport testified that he recognized the driver as Brown from a photograph. He also made an in-court identification of Brown as the man he had

seen in the beige Kia.  For each purchase, Rheaume went for a short ride in the beige Kia and the DEA received body wire recordings of the conversations taking place between Rheaume and the driver of the Kia.  After the two purchases, Rheaume handed over to Detective Newport 4.2 grams and 2.2 grams, respectively, of a mixture containing cocaine base.  Detective Newport, in turn, handed the substance over to the DEA.

Brown was indicted for two counts of distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1) and was convicted of both counts following a two-day trial.  He received the minimum sentence under the Sentencing Guidelines of 70 months' imprisonment.

Brown now appeals, raising several issues.  First, he contends that the district court twice erred in admitting testimony from DEA Agent Edward Bals ("Agent Bals"), who identified Brown as the person with whom Rheaume had spoken over the phone and in the beige Kia even though the agent lacked sufficient knowledge of Brown's voice.  Second, Brown contends that the district court erred in determining his offense level by ruling, without explicitly finding, that the "cocaine-based" substance at issue was crack.  Third, Brown contends that the district court imposed an unreasonable sentence.

## II.  Discussion

### A.  Evidentiary Issues

### 1.  Agent Bals's Testimony Regarding the Phone Calls

The district court admitted testimony from Agent Bals, the coordinator of the investigation against Brown, in which Bals described the recorded telephone calls that took place prior to each of the two purchases between Rheaume and the person who sold Rheaume the cocaine.  Agent Bals indicated that Brown was the person who made statements to Rheaume during the calls as to where and when the deal would take place.  However, Agent Bals did not first demonstrate that he could identify Brown's voice.  The district court denied Brown's objection that Agent Bals's testimony contravened the Federal Rules of Evidence, which prohibit a witness from testifying to a matter in which he lacks personal knowledge or qualifying expertise.  See Fed. R. Evid. 602.  Because Brown objected below, we review the admission of Agent Bals's testimony for abuse of discretion.  United States v. Gilbert, 181 F.3d 152, 160 (1st Cir. 1999).

In its brief, the government argued that the admission of Agent Bals's testimony was not error because it was offered not for the purpose of identifying Brown as the speaker in the telephone conversations, but rather to explain the actions taken by the DEA in its investigation of Brown.  The government argued that Agent Bals's reference to the phone calls served to corroborate the

surveillance of Brown and his vehicle going to and from Brown's apartment. The government also argued that, even if admission of the testimony was error, it was harmless. At oral argument, however, the government changed its approach and conceded that Agent Bals's testimony as elicited was error but went on to argue that the error was harmless. For purposes of this appeal, we will assume that admission of the testimony was error.

When a court errs in admitting evidence, we will not reverse if the error is harmless, i.e., "if it is highly probable that the error did not influence the verdict." United States v. García-Morales, 382 F.3d 12, 17 (1st Cir. 2004). We find that this is such a case. At trial, and prior to any testimony from Agent Bals, Rheaume testified from first-hand knowledge that Brown was the other person on the phone. Further, both Rheaume and Detective Newport made in-court identifications of Brown as the person who arrived in the brown Kia. Since the challenged testimony from Agent Bals added little to the testimony already provided by Rheaume and Detective Newport, we see no reason to believe that a re-trial excluding the impermissible portion of Agent Bals's testimony would result in a different outcome. See id.

### 2. Agent Bals's Testimony Regarding the Body Wire Recordings

At trial, Agent Bals also testified about the mini-disc recordings of the conversations that took place between Rheaume and Brown in the beige Kia during the two drug deals. Brown contests

-5-

the admissibility of this testimony, claiming that Agent Bals lacked appropriate knowledge to identify the speaker in the recordings as Brown. Since this issue is raised for the first time on appeal, we review for plain error. United States v. Medina, 427 F.3d 88, 91 (1st Cir. 2005). To successfully argue plain error, "the challenging party has the burden of showing (1) an error, (2) that is plain, (3) that affects substantial rights (i.e. the error was not harmless), and (4) that seriously undermines the fairness, integrity, or public reputation of judicial proceedings." United States v. Glenn, 389 F.3d 283, 288 (1st Cir. 2004).

The government conceded at oral argument that the admission of this testimony was error. However, even assuming that the admission of the testimony was error and that the error was plain, we find that it did not affect substantial rights because it was harmless. Brown therefore cannot meet the third prong of plain error review.

The inclusion of Agent Bals's testimony cannot be said to have affected the outcome of the case. Agent Bals described the recordings on the mini-disc as between Rheaume and Brown only after Rheaume had testified to the same. In light of the first-hand identification testimony provided by both Rheaume and Detective Newport, along with the corroborating circumstantial evidence that the seller was in Brown's vehicle, traveled to and from Brown's apartment at the time of the drug deals, and employed Brown's

cellular phone, we find that the admission of Agent Bals' testimony was not plain error.

### B.  Cocaine Base versus "Crack"

Brown was convicted for distributing 6.4 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1).  We have held that the term "cocaine base" in 21 U.S.C. § 841 "includes all forms of cocaine base, including but not limited to crack."  <u>United States v. Richardson</u>, 225 F.3d 46, 49 (1st Cir. 2000).  However, as used in the Sentencing Guidelines, "cocaine base" has a narrower meaning.  <u>Id.</u>  Under the Guidelines

> "Cocaine base," for the purposes of this guideline, means "crack."  "Crack" is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form.

U.S.S.G. § 2D1.1(c), Note (D).  Thus, under the Guidelines, "forms of cocaine base other than crack are treated as cocaine."  <u>Richardson</u>, 225 F.3d at 49.  The district court found that Brown was responsible for cocaine base as that term is used by the Guidelines and assigned him a total offense level of twenty-six.[1] Because Brown "was sentenced under the Guideline provision for

---

[1]  The base level for an offense involving a quantity of "cocaine base" -- as that term is defined by the Guidelines, i.e., crack -- is equivalent to that for an offense involving 100 times that quantity of "cocaine."  U.S.S.G. § 2D1.1(c).

cocaine base[,] his sentence . . . depended on a finding that the substance attributed to him was crack." Id. at 50.[2]

Brown appeals the district court's finding that the "cocaine-based" substance in the instant case is "crack" and contends that he should have received an offense level consistent with the distribution of "cocaine."[3] We review the district court's interpretation of the Guidelines de novo and its factual findings for clear error. United States v. Meada, 408 F.3d 14, 24 (1st Cir. 2005).

The district court based its finding that Brown was responsible for crack on the fact that he was convicted for distribution of "cocaine base." The district court (and the government) believed that "cocaine base," as used in 21 U.S.C. § 841, had the same meaning as "cocaine base" as used in the Guidelines. The court believed that because Brown had been convicted of distributing "cocaine base" under 21 U.S.C. § 841, he was necessarily responsible for "cocaine base" -- i.e., crack -- under the Guidelines. However, as the government admits on appeal, this view was erroneous and contrary to our holding in Richardson.

---

[2] At sentencing, Brown argued that the government had failed to prove that he distributed crack.

[3] The Sentencing Guidelines distinguish only between "cocaine base," defined as "crack," and "cocaine." The latter, undefined, could therefore include other forms of cocaine base and certainly includes cocaine hydrochloride (powder cocaine). See U.S.S.G. § 2D1.1(c).

Nevertheless, if there is sufficient evidence to support an alternative explanation for the court's finding that the substance at issue was crack, the error is harmless and there would be no reason to remand to the district court when the result would be the same. See, e.g., United States v. Pizarro-Berríos, __ F.3d __, 2006 WL 1195664, at *5 (1st Cir. May 5, 2006). We therefore turn to whether the district court's finding that the substance in question was crack is supported by the record.

In Richardson, we stated that the distinction in the form of cocaine base lies not in its chemical profile, as crack is chemically identical to other forms of cocaine base, but rather its physical properties. 225 F.3d at 50. While laboratory testing and expert testimony can specifically identify when sodium bicarbonate -- which is often used in making crack -- is present, crack is also uniquely identified by its "rock-like" texture and yellowish or off-white color. See id. Lay opinion as to the appearance of a substance to this effect may be used to prove that the substance is crack. Id.

A survey of the record reveals the following evidence in support of a finding that the substance Brown sold was crack: (1) a forensic chemist testified that the substance given to her for tests was cocaine base in "rock-like form"; (2) Rheaume testified that he ordered crack from Brown, and the two discussed Brown getting "those things" for Rheaume, which Rheaume explained meant

"crack"; (3) Detective Newport testified that Rheaume gave him a "hard rock-like substance," and identified the substance as "crack"; and (4) Agent Bals, with twenty-one years of law enforcement experience, testified that each bag of drugs turned over to the DEA contained a "rock, off-white substance," which appeared to him to be crack cocaine. In view of all of the testimony presented at trial, see id., and in light of the "'utter absence' of evidence that the substance was anything other than crack cocaine," United States v. Robinson, 144 F.3d 104, 109 (1st Cir. 1998), we discern no clear error in the district court's determination that the substance at issue in this case was crack.[4]

### C. The Reasonableness of the Sentence

We now turn to Brown's only remaining claim, that his sentence was unreasonable. Given an offense level of twenty-six, and a Criminal History Category of II, the Guidelines range for Brown's sentence was 70-87 months. The district court imposed a sentence at the low end of the range, 70 months' imprisonment on each distribution count, to run concurrently, to be followed by three years of supervised release. We evaluate the reasonableness

---

[4] Brown argues that the record does not support a finding of "crack" because the evidence does not indicate that the substance at issue was "smokable." We have never held that the government must prove that a substance is smokable in order for there to be a proper finding that the substance was crack, and we decline to do so here. While smokability might be relevant to the inquiry, we do not think that it is a necessary element for finding a substance to be crack.

of this within-Guidelines sentence according to the methodology set forth in United States v. Jiménez-Beltre, 440 F.3d 514, 516-19 (1st Cir. 2006) (en banc) (holding that regardless of whether a sentence falls inside or outside the applicable Guideline range, we use the district court's reasons for a sentence to assess its reasonableness).

After reviewing the record, we conclude that the district court's sentencing procedure did not run afoul of Jiménez-Beltre. The court consulted the Guidelines along with the relevant statutory factors in 18 U.S.C. § 3553(a) prior to handing down its final decision. See United States v. Sagendorf, 445 F.3d 515, 517 (1st Cir. 2006) (in affirming the defendant's sentence, noting that the district court had consulted the § 3553(a) factors and the Guidelines before deciding that sentence at the bottom of the Guidelines range was reasonable and just). The court also stated that it took into account the statutory factors, along with Brown's "record as a whole," specifically noting Brown's "troubled history" and that the offenses were "deliberate sales" of "highly addictive drugs." With these facts in mind, the district court stated that "60 to 75, 80 months is where I would be absent the advisory guidelines, and 70 months certainly seems like a reasonable sentence."

Brown also argues that the court's reference to the reasonableness of the sentence it was choosing to impose is an

indication that the court treated the Guidelines as presumptively reasonable, in contravention with <u>Jiménez-Beltre</u>. We disagree. The district court is required to give due weight to the Guidelines range in providing justification for the sentence. <u>Jiménez-Beltre</u>, 440 F.3d at 518; <u>Booker</u>, 543 U.S. at 264 ("The district courts, while not bound to apply the Guidelines, must consult [them] and take them into account when sentencing."). By indicating that a 70-month sentence would have been appropriate even in the absence of the Guidelines, the court dispelled any suspicion that the Guidelines were the determinative, or even controlling, factor.[5] In other words, the district court determined where it would be without the Guidelines. Then, taking the Guidelines into account as an additional factor, it decided that 70 months was an appropriate sentence. We do not think that the district court considered the Guidelines to be presumptively reasonable.

The court provided a "plausible," and therefore at least "defensible," explanation for the sentence. See <u>Sagendorf</u>, 445 F.3d at 518. We therefore find that the sentence was reasonable.

### III. Conclusion

For the foregoing reasons, we **<u>affirm</u>** Brown's conviction and sentence.

---

[5] Brown also argues that his sentence was unfair and thus "unreasonable" because the Guidelines treat one gram of crack as equivalent to 100 grams of cocaine. We reject this argument. See <u>United States</u> v. <u>Pho</u>, 433 F.3d 53, 62-63 (1st Cir. 2005).