**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 13-2496

UNITED STATES OF AMERICA,

Appellee,

v.

BONIFACIO TORIBIO-ALMONTE, a/k/a CARLOS DE-LA-CRUZ-SANCHEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Kayatta, Stahl, and Barron,
Circuit Judges.

George F. Gormley, with whom Stephen P. Super was on brief, for appellant.

Francisco A. Besosa-Martínez, Assistant United States Attorney, with whom Rosa Emilia Rodriguez-Velez, United States Attorney, and Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, were on brief, for appellee.

October 23, 2015

**STAHL**, <u>**Circuit Judge**</u>.  The defendant, Bonifacio Toribio-Almonte, after having pled guilty to participating in a drug-trafficking conspiracy, now appeals from his sentence.  At sentencing, the government claimed that the defendant was a leader or organizer of the conspiracy--a claim for which the government finds no support in the record and accordingly declines now to defend.  Because resolution of the government's claim appeared central to the sentencing calculus, and yet because the record is too unclear to engage in effective appellate review on this question, we vacate the sentence and remand the action for resentencing.

## I.  Facts & Background

We draw the facts from the uncontested presentence report ("PSR") and the transcript of the sentencing hearing. <u>United States</u> v. <u>Gaffney-Kessell</u>, 772 F.3d 97, 98 (1st Cir. 2014).

On April 12, 2012, a U.S. Customs and Border Protection marine patrol aircraft detected a small boat approximately seventeen nautical miles off the coast of Puerto Rico.  The vessel, later determined to be registered in the Dominican Republic, was sailing in the direction of Dorado, Puerto Rico, with its lights out and, as it turned out, carrying six people on board.  As the aircraft approached the vessel, several bales of what appeared to

be contraband were thrown overboard. The boat was intercepted and its passengers were arrested, including the defendant and five other individuals, all Dominican citizens. Six of the jettisoned bales were later recovered from the water and a field test yielded positive results for the presence of cocaine and heroin.[1] In total, 146.5 kilograms of cocaine and 8.53 kilograms of heroin were seized.

The defendant and the five others on board the vessel were indicted on one count of conspiracy to import five kilograms or more of cocaine and one kilogram or more of heroin into the United States, 21 U.S.C. §§ 952(a), 960, 963, and one count of conspiracy to possess and distribute five kilograms or more of cocaine and one kilogram or more of heroin on board a vessel within U.S. customs waters, 46 U.S.C. §§ 70503(a)(1), 70504(b)(1), 70506(a).[2] The government initially offered the defendant a plea agreement, wherein the government agreed to recommend a sentence of 108 to 135 months, but the defendant rejected it, opting instead to go to trial. However, on the morning that trial was scheduled

---

[1] Subsequent chemical testing confirmed that the substances were in fact cocaine and heroin.

[2] The indictment also charged two of the codefendants with attempting to reenter the United States without permission after having been deported. 8 U.S.C. § 1326(a).

to begin, the defendant entered a guilty plea, with no plea agreement. The trial proceeded against four of his codefendants, who were ultimately convicted, while the fifth also pled guilty.

The probation office calculated the defendant's base offense level as 38, given the drug quantities at issue, and calculated an overall adjusted offense level of 36 based on the defendant's acceptance of responsibility. The defendant had no criminal history points, placing him in criminal history category I. A total offense level of 36 and a criminal history category of I yielded a guidelines sentencing range of 188 to 235 months' imprisonment. The counts carried a mandatory minimum sentence of 120 months.

In its sentencing memorandum, the government requested a sentence of 235 months, at the high end of the guidelines range. In support, the government submitted that "maritime drug trafficking . . . has significantly increased over the past years" and that Puerto Rico "has seen a dramatic increase in overall drug use and consumption[.]" The government further stated, "[a]ny potential argument that the defendant acted as a mere 'mule' who now deserves a downward departure . . . directly snubs the potential victims of the defendant's offense[.]"

In his sentencing memorandum, the defendant requested that the Court "not impose a strict Sentencing Guidelines sentence[.]" Instead, the defendant requested a sentence below the mandatory minimum or, "[i]n the alternative," the mandatory minimum itself.[3] At the sentencing hearing, defense counsel provided some additional points of reference "for persuasion purposes." Drawing the court's attention to "similar" cases previously before the District of Puerto Rico, defense counsel observed that conspiracy "leaders" received sentences of approximately 188 months, whereas other participants received lesser sentences, such as 97 months, 125 months, or the applicable mandatory minimum. Defense counsel then asked the court to consider the fact that the defendant was a "minor participant" in fashioning its sentence. In response, the district court acknowledged that the government's sentencing memorandum "assumes that [the defendant] may be a mule[.]"

The prosecutor immediately disputed that the defendant was a lesser participant, stating that the government believed, based on the debriefing of a coconspirator, that the defendant was

_____

[3] The defendant's sentencing memorandum posits the statutory minimum as 60 months rather than 120 months, a mistake brought to the district court's attention by defense counsel at the outset of the sentencing hearing.

- 5 -

an organizer of the drug-trafficking scheme in question. "So that being said and following in line with the cases that [defense counsel] mentioned," the prosecutor argued, "it would behoove this Court to sentence him within this guideline range."

As the hearing drew to a close, defense counsel pushed back on the suggestion that the defendant held any kind of leadership role. Without speaking directly to defense counsel's argument, the district court moved directly to allocution. Noting, inter alia, the defendant's status as a father, his lack of a criminal record or history of substance abuse, and his past illegal entry into the United States, the court imposed a sentence of 188 months' imprisonment.[4] The court did not indicate whether the defendant's request for a below-guidelines sentence had been entertained as a motion, or denied as such, and the court made no findings concerning the only fact debated at the hearing; i.e., defendant's alleged role as an organizer of the conspiracy. The court only noted that it had "taken into consideration the arguments of counsel[.]"

---

[4] Over a year after the sentencing hearing, the district court granted the defendant's motion to reduce his sentence, based on the U.S. Sentencing Commission's change to the drug quantity table, made retroactive pursuant to 28 U.S.C. § 994(u). The court reduced the defendant's sentence from 188 to 151 months.

## II. Analysis

On appeal, the defendant attacks the reasonableness of his sentence. Such a challenge "involves a procedural as well as a substantive inquiry." United States v. Politano, 522 F.3d 69, 72 (1st Cir. 2008) (citing Gall v. United States, 552 U.S. 38, 51 (2007)). "We first determine whether the district court made any procedural errors" such as "selecting a sentence based on clearly erroneous facts[.]" Id. (quoting Gall, 552 U.S. at 51). In the absence of procedural error, "we next turn to the substantive reasonableness of the sentence actually imposed[.]" Id. "We review preserved objections to both the procedural and substantive reasonableness of a sentence for abuse of discretion." United States v. Medina-Villegas, 700 F.3d 580, 583 (1st Cir. 2012). Where a claim has not been preserved, our review is for plain error. Id. This entails four showings: "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." Id. (quoting United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001)).

The defendant lodges both procedural and substantive complaints, but we need only address one: sentencing based on

erroneous facts.  The defendant claims that the district court erred by allegedly relying upon the government's unsupported assertion that the defendant was an organizer of the conspiracy, which the defendant directly and explicitly challenged when it was raised for the first time at the sentencing hearing.

On appeal, the government has made no attempt to defend its assertion that the defendant was a "leader" or "organizer." In fact, at oral argument, the government pointed to no evidence on the record that the defendant was an organizer and, indeed, conceded that there was no such evidence.  In any event, the record tends to belie the government's abandoned claims of leadership. First, the offense conduct articulated in the PSR, which did not attribute to the defendant an aggravating-role enhancement, describes all defendants as having "equal roles in the conspiracy." The government did not file an objection to the PSR or seek a sentencing enhancement.  Second, the government's sentencing memorandum anticipated that the defendant would claim a mere bit part in the affair.  Rather than countering that the defendant played a major role, the government protested that any downward variance on this basis would snub the potential victims of the offense.  As the district court noted, this position assumes that the defendant was, in fact, a minor participant.  Finally, at the

trial of the defendant's confederates, counsel for one of the defendants told the jury that the conspirators who pled guilty, rather than those on trial, were the ones "responsible" for the scheme. The government objected to this claim for referring to facts not in evidence. The court sustained the objection. The government may find it convenient for the pleading defendants to be "responsible" for the conspiracy now that their codefendants' trial has closed, but what is sauce for the goose is sauce for the gander. The record cannot abide the government's volte-face.

Even if we assume that the defendant did not adequately preserve his objection,[5] however, "it is impossible to determine, based on this record, whether a clear and obvious error (or for that matter, any error at all) occurred." United States v. Mendez, ___ F.3d ___, No. 14-1566, 2015 WL 5306457, at *4 (1st Cir. 2015). From start to finish, the sentencing hearing centered almost

---

[5] It is typically the defendant's responsibility to police the adequacy of the record by objecting to any deficiencies in the district court's explanations. See United States v. Gilman, 478 F.3d 440, 447 (1st Cir. 2007). But on the facts of this case, where defense counsel engaged in a highly consequential factual dispute before the sentencing court, and where the government's position in that dispute had little to no support in the record, and where the district court failed to send any signal as to how its resolution of the critical question played into its sentencing rationale, we cannot justly lay sole responsibility for the record's ambiguity at the feet of the defendant.

entirely on the question of whether the defendant was a leader or organizer as opposed to a mere minor participant in the conspiracy. Yet, the record is silent as to how the court resolved that question.

"While we have on occasion gone to significant lengths in inferring the reasoning behind, and thus in affirming, some less-than-explicit explanations by district courts, there are limits. If we are in fact wholly unable to discern the court's rationale, appellate review is unworkable and a remand is necessary." Id. (internal citations and quotation marks omitted). Such is the case here.

On the central question presented at the sentencing hearing, the court merely observed in closing that it had "taken into consideration the arguments of counsel to sentence him to the minimum of the guideline range[.]" But the sentence itself is one that neither party clearly requested, and it therefore offers us no insight into whether the court did or did not find the defendant's role to be minor or major. Perhaps the court understood the defendant to have requested a sentence at the low end of the guidelines range rather than a sentence below the guidelines range, but, here too, inferences from the record point

in both directions and frustrate our capacity to engage in a meaningful analysis.

Although the law "does not require a district court to be precise to the point of pedantry," United States v. Fernández-Cabrera, 625 F.3d 48, 53 (1st Cir. 2010), we must be able to ascertain the court's findings to engage in effective appellate review. See Mendez, 2015 WL 5306457, at *5. "We cannot do that here and, therefore, are unable to effectively consider even the first prong of plain error review." Id.

## III. Conclusion

The Court's holding today is an exceedingly narrow one, confined to the unique and opaque record before us. Where the sentencing hearing is largely devoted to a single, highly material issue debated by the parties, and where resolution of that issue in favor of the prosecution would be clear error, we need to know how the court resolved the question in exercising its broad sentencing discretion in order that we may perform our appellate function of determining whether the sentencing was procedurally

correct.  For the reasons stated above, the defendant's sentence is VACATED and the action is REMANDED for re-sentencing.[6]

---

[6] We make no comment on the appropriate sentence that may follow a properly conducted sentencing hearing.  In addition, we need not address the defendant's contention that the district court committed procedural error by failing to apply the "safety valve" provision of the sentencing guidelines that permits relief from otherwise mandatory minimum sentences if certain criteria are met. See 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2.  We recognize that the defendant's sentencing memorandum appears to light upon the elements of a safety valve reduction, however ungracefully.  A defendant does not need to incant the magic words "safety valve" in order to invoke its protections, but the defendant also bears the burden of raising the issue with sufficient clarity. United States v. Richardson, 225 F.3d 46, 53 (1st Cir. 2000) ("The defendant bears the burden of showing his entitlement to a safety valve reduction.").  We express no opinion as to whether that threshold was met here or whether the defendant qualifies under the relevant provision.  The district court may evaluate the defendant's qualifications in the first instance upon remand.