USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 90-1882 UNITED STATES, Appellee, v. SCOTT N. ROGERS, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Shane Devine, Senior U.S. District Judge] __________________________ ____________________ Before Torruella, Chief Judge, ___________ Bownes, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ ____________________ Gordon R. Blakeney, Jr. for defendant, appellant. _______________________ Peter E. Papps, First Assistant United States Attorney, with whom ______________ Paul M. Gagnon, United States Attorney, was on brief for appellee. ______________ ____________________ December 8, 1994 ____________________ BOWNES, Senior Circuit Judge. Defendant-appellant BOWNES, Senior Circuit Judge. ____________________ Scott N. Rogers was convicted under 18 U.S.C. 922(g)(1) as a felon in possession of a firearm. He appeals his conviction on various grounds. We affirm. I. FACTS I. FACTS _____ The evidence, taken in the light most favorable to the government, see United States v. Ford, 22 F.3d 374, 382 ___ ______________ ____ (1st Cir.), cert. denied, 115 S. Ct. 257 (1994), tended to _____ ______ show the following. On April 4, 1989, four police officers arrived at an apartment on 5 Wheelock Street in Manchester, New Hampshire, where Rogers, who had escaped from prison, was believed to be hiding. Two of the officers entered the bedroom in the northeast corner of the apartment, where they found Rogers in the closet and took him into custody. A pat- down revealed a .32 caliber bullet in his right front pants pocket. Rogers announced that the officers were lucky they found him before he got to his gun, or he would have blown ___ his brains out. In the meantime, the third officer went to the bedroom in the northwest corner of the apartment, where he found a .32 caliber Smith and Wesson handgun in plain view on top of the dresser. The gun was fully loaded. The officer unloaded the gun and seized it as evidence. A fourth officer -2- 2 went into the center bedroom, where he found and briefly detained one Michael Glennon, a friend of the defendant. Rogers was taken to the police station, where he was given Miranda warnings. Rogers indicated that he _______ understood his rights and signed a waiver form. He stated that the gun seized at the apartment was a "throw-away" weapon that he had purchased for fifty dollars. He again stated that he had intended to use the gun to commit suicide if the police got close to him. Rogers was questioned about several burglaries in Manchester. He admitted that he was involved in two burglaries at the Louisa's pizzeria, as well as a third at the Sub Hut. A federal grand jury returned a one-count indictment charging Rogers as a convicted felon in possession of a firearm in violation of 18 U.S.C. 922(g). At trial, Rogers testified that the gun belonged to Michael Glennon, and denied making any statement about shooting himself, or being the owner of the gun. In fact, none of the fingerprints found on the gun belonged to Rogers. The bullet found in his pocket allegedly came from a box of fifty bullets that Glennon had bought. Glennon, Rogers testified, liked to flick bullets at him in horseplay. On the night he was arrested, Rogers allegedly stepped on a bullet as he walked barefoot in the living room of the apartment. He -3- 3 picked up the bullet and slipped it in his pocket, intending to place it in a jewelry box elsewhere in the apartment. The other witness called by the defense was Joseph Perkins, the defendant's brother, who testified that Glennon pulled the gun out of his pocket to show it to him during one of his visits to the apartment. Rogers was convicted on May 2, 1990. Because he had committed at least five previous felonies, the district court imposed the statutory mandatory minimum sentence of fifteen years. See 18 U.S.C. 924(e). ___ II. DISCUSSION II. DISCUSSION __________ A. Constructive Possession A. Constructive Possession Rogers argues that the "possession" of a firearm under 18 U.S.C. 922(g) must be actual, not constructive.1 Constructive possession, however, is possession. See United __ ___ ______ States v. Zavala Maldonado, 23 F.3d 4, 6 (1st Cir.), cert. ______ ________________ _____ denied, 115 S. Ct. 451 (1994) ("Under settled law, ______ 'possession' includes not merely the state of . . . hands-on physical possession but also 'constructive' possession"). In United States v. Wight, 968 F.2d 1393, 1397-98 (1st Cir. ______________ _____ 1992), we "ma[de] explicit the obvious" and found that "the element of 'knowing possession' under section 922(g)(1) may  ____________________ 1. Section 922(g) provides in pertinent part: "It shall be unlawful for any person . . . who has been convicted in any court of [] a crime punishable by imprisonment for a term exceeding one year to . . . possess . . . any firearm." -4- 4 be established by proving that the defendant was in constructive possession of a firearm." Wight adopted the _____ prevailing (and only) rule in the other circuits. Id. at __ 1398 n.6 (collecting cases). See also United States v. ___ ____ ______________ Lamare, 711 F.2d 3, 5 (1st Cir. 1983) (under former  ______ 922(h)(1), "receipt" of the firearm may be shown by proving possession; possession can be actual or constructive). Rogers argues that 922(g) is unconstitutional as applied to him because the government "neither alleged nor attempted to prove any fact concerning possession other than ownership of the firearm." It allegedly ignored the question _________ of intent to control. In fact, the government offered Rogers' own statement that he intended to use his gun to commit suicide if the police were to find him. Rogers also argues that 18 U.S.C. 922(g) is unconstitutionally vague to the extent that it proscribes constructive possession. He notes that some courts require proof of the defendant's "dominion and control" over the firearm, see, e.g., Wight, 968 F.2d at 1398; others, ___ ____ _____ "dominion or control," see, e.g., United States v. McKnight, __ ___ ____ _____________ ________ 953 F.2d 898, 901 (5th Cir.), cert. denied, 112 S. Ct. 2975 _____ ______ (1992) (emphasis added). Still others consider ownership of the firearm either "irrelevant to possession," United States _____________ v. Boykin, 986 F.2d 270, 274 (8th Cir.), cert. denied, 114 S. ______ _____ ______ Ct. 241 (1993), or virtually conclusive, United States v. ______________ -5- 5 Barron-Rivera, 922 F.2d 549, 552 (9th Cir. 1991). These _____________ inconsistencies, Rogers argues, leave him with insufficient notice of the conduct that is criminally proscribed. Because "dominion," "control," and "ownership" are overlapping concepts, it is not surprising that some judicial glosses upon "possession" may seem facially inconsistent. These differences do not, however, make the language of 18 U.S.C. 922(g) unconstitutionally vague. We think that the term "possession" concretely describes the conduct proscribed by the statute.2 More than a few laws would be in jeopardy if absolute consistency of judicial interpretation were the measure of a law's constitutionality. B. The Sufficiency of the Indictment B. The Sufficiency of the Indictment Rogers argues next that his indictment was insufficient because it failed to set forth "any facts ___ (except for an 'on or about' date) . . . as to the charge of having 'possessed' the weapon . . . ." On the contrary, the indictment stated the date of the offense, the district in which it occurred, the make, type and serial number of the firearm, the felony conviction underlying the charge, and the citation of the statute. The indictment provided a "plain,  ____________________ 2. Cf. Zavala Maldonado, 23 F.3d at 7 (the idea underlying ___ ________________ constructive possession is "not so difficult to grasp. Courts are saying that one can possess an object while it is hidden at home in a bureau drawer, or while held by an agent, or even while it is secured in a safe deposit box at the bank . . . ."). -6- 6 concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). No more was required to "fairly inform[]" Rogers of the possession charge, "and [to] enable[] him to enter a plea without fear of double jeopardy." United States v. Yefsky, ______________ ______ 994 F.2d 885, 893 (1st Cir. 1993) (citing Hamling v. United _______ ______ States, 418 U.S. 87, 117 (1974)).3 ______ C. The Jury Instructions C. The Jury Instructions Rogers argues that the jury instructions incorrectly defined "possession" in terms of ownership. Because defense counsel did not object on this basis, we review the instructions only for plain error. United States _____________ v. Burns, 15 F.3d 211, 217 (1st Cir. 1994). _____ "'Constructive' possession is commonly defined as the power and intention to exercise control, or dominion and control, over an object not in one's 'actual' possession." Zavala Maldonado, 23 F.3d at 7. The district court explained ________________ possession as follows: The term "possess" as used in [ 922(g)] is not necessarily equated with legal _________________________________________ ownership of the firearm here at issue. _________ The law recognizes two kinds of possession, actual possession and constructive possession. A person who knowingly has direct physical control  ____________________ 3. Rogers also complains that the indictment did not specify whether he actually or constructively possessed the firearm. As we noted earlier, constructive possession is possession, __ not a separate predicate act that has to be spelled out in the indictment. -7- 7 over a thing at a given time is then said to be in actual possession of that thing. A person who, although not in actual possession, knowingly has both the power _____________________________ and the intention at a given time to __________________ __ exercise dominion or control over a _______________________________ thing, or to exercise dominion or control over the area in which that thing is found, whether directly or through another person, is then in constructive possession of the thing [emphasis added]. We discern no error in this explanation. The instructions correctly stated that ownership is relevant to the question of possession. To be sure, ownership alone does not establish possession, but it may be highly relevant where the authority to exercise control is disputed. Cf. United ___ ______ States v. Ocampo-Guarin, 968 F.2d 1406, 1410 (1st Cir. 1992) ______ _____________ (finding possession of cocaine where drug courier "carried baggage claim tickets that represented her legal right to reclaim [her] luggage").4 Rogers also complains that the district court used the conjunction "or" rather than "and" -- "dominion or __ control." Dominion, however, is generally defined as "perfect control in right of ownership." Black's Law _______ ____________ Dictionary 436 (5th ed. 1979) (emphasis added). Pursuant to __________  ____________________ 4. We think that the blanket statement in Boykin, 986 F.2d ______ at 274, that "ownership is irrelevant to possession," must be considered in context. In Boykin, the defendant's wife ______ claimed that she owned the firearm. Had the defendant himself owned the firearm, the court would not have considered that fact irrelevant. See id. ("Constructive ___ ___ possession . . . is established if the person has . . . control, ownership, or dominion over the firearm itself"). -8- 8 the court's instruction, there could have been no conviction absent a finding of control.5 Rogers argues next that the district court committed plain error by giving only a general unanimity instruction, and no specific unanimity instruction. During its deliberations, the jury sent a note to the district judge: "We would like clarification of the two types of possession." The court repeated its original instruction on possession, and this exchange took place: THE COURT: Does that answer your question, ladies and gentlemen? It doesn't? That's the law on actual and constructive possession. You're shaking your head, sir. What's the problem? MR. ROWELL: Interpretation of constructive possession. If you know where something is do you constructively possess it? THE COURT: I can't give you anything more than what I've given you. That's what the law says. Sorry about that. Anything further? Thank you.  ____________________ 5. At times, we have used the conjunctions "and" and "or" interchangeably. Compare United States v. Latham, 874 F.2d _______ _____________ ______ 852, 861 (1st Cir. 1989) ("constructive possession [is] defined as exercising dominion, or control over the drug to be distributed"), with Wight, 968 F.2d at 1398 ("dominion and ____ _____ control"). See also United States v. Acevedo, 842 F.2d 502, ___ ____ _____________ _______ 507 (1st Cir. 1988) (quoting, with approval, the phrase "dominion or control" from jury instructions). We see no real contradiction so long as the term "dominion" is properly understood as encompassing control. -9- 9 Although the district court might have attempted to refine its explanation,6 it was not required to give an instruction on specific unanimity at this point. Congress did not define possession in terms of alternative acts, any one of which would suffice for a conviction. Thus, the one- count indictment in this case had no inherent tendency to produce a patchwork verdict. Cf. United States v. Antonio ___ _____________ _______ Medina Puerta, No. 93-2167, slip op. at 16 (1st Cir. Oct. 21, _____________ 1994) (noting threat of non-unanimous verdict where divergent conduct underlay two branches of a single count). Unlike the jury in United States v. Duncan, 850 F.2d 1104, 1109 (6th ______________ ______ Cir. 1988), which asked whether it must agree as to each of the alternative acts underlying the offense, the juror in this case simply asked for clarification of possession, the one act necessary for conviction. We see no threat of a patchwork verdict beyond the possibility, conceivably present in every case, that a juror may not have understood the court's explanation of the law. D. The un-Mirandized Statement D. The un-Mirandized Statement Rogers argues that the district court committed plain error in admitting evidence of his statement, made in  ____________________ 6. In Zavala Maldonado, 23 F.3d at 7, we noted that "[t]he ________________ 'constructive possession' label may confuse jurors at first - - drug trial juries routinely ask to be reinstructed on the definition of possession -- but the underlying idea is . . . not so difficult to grasp." -10- 10 the bedroom of the apartment, that he would have blown his brains out had he been able to reach his gun. After taking Rogers into custody, the officers waited approximately ten minutes for the arrival of another officer who could positively identify the defendant. In the meantime, they asked Rogers who he was. There is no evidence that the officers asked Rogers for more than his name, cf. ___ United States v. Doe, 878 F.2d 1546, 1551 (1st Cir. 1989) _____________ ___ ("[a]ssuming the existence of a Miranda exception" for _______ routine booking interrogation), or that his statement was anything but voluntary and spontaneous. Accordingly, we cannot find plain error. E. The Sufficiency of the Evidence E. The Sufficiency of the Evidence Rogers argues that the evidence of constructive possession was insufficient to support his conviction. In making this argument, he bears "the heavy burden of demonstrating that no reasonable jury could have found [him] guilty beyond a reasonable doubt." United States v. ______________ Innamorati, 996 F.2d 456, 469 (1st Cir.), cert. denied, 114 __________ _____ ______ S. Ct. 409 (1993). We review the evidence in the light most favorable to the government, "drawing all plausible inferences in its favor and resolving all credibility determinations in line with the jury's verdict." Id. ___ The government's case for constructive possession rested on (1) Rogers' declaration that if he could have -11- 11 gotten to his gun in the apartment, he would have blown his brains out; (2) his admission that he owned the gun; and (3) the bullet found in his pocket, which matched the gun. This evidentiary tripod is sufficient to establish power as well _____ as intent to exercise dominion and control over the gun. ______ That Rogers did not shoot himself simply illustrates a fact of constructive possession: power and intent to act do not always result in action. When the officers arrived at the apartment, Rogers hid in the closet of the northeast bedroom rather than move toward the gun in the northwest bedroom. One officer testified that once the front door to the apartment was opened, it was possible to see someone entering or leaving any of the bedrooms. The jury could have reasonably believed that Rogers did not try to reach the gun because he hoped to escape detection. F. Evidence of Other Crimes F. Evidence of Other Crimes Rogers assigns plain error in the admission of evidence of several of his prior crimes. On direct examination, Rogers freely admitted that he had been convicted of burglary "[m]any times." Dissatisfied, perhaps, with his sanguine answer, the government inquired into at least six of Rogers' burglaries. In most instances, the government asked about the underlying crime without -12- 12 establishing a conviction. See Fed. R. Evid. 609(a).7 The ___ following exchange is typical: Q: Isn't it a fact that on or about July 29th, 1986 in Manchester you purposefully entered a building housing the Queen City Farms, broke into it to steal property? A: I did, sir. Q: Isn't it a fact that on or about July 29th, 1986 in Manchester you entered the Sunoco Service Station at 229 Queen City Avenue, Manchester, broke into it in order to steal property? A: I did, sir. The government argues that the strictures of Rule 609 do not apply because it was simply trying to correct the defendant's own testimony.8 Cf. United States v. Brooke, 4 ___ _____________ ______ F.3d 1480, 1488 n.10 (9th Cir. 1993) (Rule 609 "does not . . . address or resolve the admissibility of cross-examination regarding arrests," as opposed to convictions, "particularly  ____________________ 7. Rule 609(a) provides in relevant part: "For the purpose of attacking the credibility of a witness . . . evidence that an accused has been convicted of [a crime punishable by death _________ or imprisonment in excess of one year under the law under which the accused was convicted] shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused" (emphasis added). 8. The government does not contend that the evidence of Rogers' criminal conduct was properly admitted under Fed. R. Evid. 608(b), which provides, in relevant part, that "[s]pecific instances of the conduct of a witness . . . may . . . in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross- examination of the witness . . . concerning the witness' character for truthfulness or untruthfulness[.]" -13- 13 where such questions do not relate to general credibility but to specific information elicited on direct"). On direct examination, Rogers falsely stated that he had been offered a plea bargain for the case then being tried. He also admitted that he had misled police officers during his interrogation. Rogers did not, however, attempt to "explain away" his ___ burglary convictions, see United States v. Robinson, 8 F.3d ___ _____________ ________ 398, 411 (7th Cir. 1993) (even an assertion of innocence does not rise to level of "explaining away" the conviction). Nor did he otherwise "equivocate[] in a self-serving manner" with ____ respect to those convictions, see United States v. ________________________________ ___ ______________ Watchmaker, 761 F.2d 1459, 1474 (11th Cir. 1985), cert. __________ _____ denied, 474 U.S. 1100 (1986). Accordingly, this part of the ______ government's cross- examination relates only to Rogers' general credibility, and any impeachment by evidence of convictions should have been conducted in accordance with Rule 609(a). Even if the government had established all six convictions, it is unclear whether the district court "determine[d] that the probative value of admitting this evidence outweigh[ed] its prejudicial effect to the accused." See Rule 609(a)(1). During Rogers' cross-examination, the ___ district court instructed Rogers to answer a question -14- 14 regarding the burglaries at Louisa's:9 "That goes to your credibility and under the Federal Rules of Evidence he's entitled to inquire as to any crime you committed in the last ___ ten years" (emphasis added).10 This categorical statement suggests that the district court may have failed to assess the prejudicial effect of the evidence of each conviction under Rule 609(a)(1).11 We nonetheless hold that it was not plain error for the district court to admit the evidence of Rogers' burglaries. Under Rule 609, we think that at least five of the burglary convictions would have been admissible. The sixth, the sole documented conviction, presents a close question because a firearm was one of the stolen items recovered from the defendant. But even if the admission of the sixth conviction were a "clear" or "obvious" error that affected "substantial rights," we doubt that it resulted in a  ____________________ 9. As we explain infra, this part of the cross-examination _____ was properly admitted (albeit for reasons different from those given by the district court). 10. Rule 609(b) provides in part: "Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction . . . ." 11. Cf. United States v. Tavares, 21 F.3d 1 (1st Cir. 1994) ___ _____________ _______ (en banc) (where defendant is charged as a felon-in- possession in violation of 18 U.S.C. 922(g), evidence of the nature of the predicate conviction is not admissible unless the trial court identifies special circumstances establishing that the relevance of the evidence is "sufficiently compelling to survive the balancing test of Fed. R. Evid. 403"). -15- 15 "miscarriage of justice" such as "the conviction or sentencing of an actually innocent defendant." United States _____________ v. De Masi, No. 92-2062, slip op. at 28 (1st Cir. Oct. 26, ________ 1994) (quoting United States v. Olano, 113 S. Ct. 1770, 1776- _____________ _____ 79 (1993)) (defining plain error). G. Prosecutorial Misconduct G. Prosecutorial Misconduct Rogers argues that the district court committed plain error by permitting various instances of alleged prosecutorial misconduct. Commenting on the evidence of Rogers' burglaries, the prosecutor stated that he had to "pull the documented facts out of" Rogers, for Rogers "won't even admit to some of the cases we have certified convictions of." The prosecutor also invited the jury to "imagine [Rogers] walking around with a loaded gun[.]" Finally, the prosecutor "submit[ted] that [the defendant's] entire testimony was riddled with lies and evasions": the defendant "testified and fabricated his entire testimony right before you." Although we are troubled by the prosecutor's rhetoric -- "walking around with a loaded gun" implies actual possession, which was not proved -- and by the pejorative comments upon evidence that may have been improperly elicited in the first place, cf. Brooke, 4 F.3d at 1488 (continued ___ ______ references to erroneously-admitted evidence in closing arguments may make error harmful), we do not find plain -16- 16 error. There was simply no "'cumulative evidence of a proceeding dominated by passion and prejudice,'" United ______ States v. Capone, 683 F.2d 582, 586 (1st Cir. 1982) (quoting ______ ______ United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 240 ______________ _____________________ (1940)). H. Hearsay Evidence H. Hearsay Evidence Rogers argues that it was plain error to admit police testimony suggesting that he may have been armed: We told [the tenant of the apartment] . . . [w]e were there looking for Scott Rogers and the information we had was that he was in this apartment, and that we had also had information that he may be armed and that we wanted to _________________ come in and look for him, and that if too much hesitation went on somebody could ______________ get hurt due to the fact that we felt he _________________________________________ was armed [emphasis added]. _________ Another officer testified that he was dispatched to the apartment "because we had information that Scott Rogers was at the address and that he was possibly armed . . . ." Rogers argues that these statements were hearsay going to the issue of possession, the only disputed element in the case. By its silence, the government has apparently conceded that the statements were hearsay not covered by any exception. The hearsay did not affirmatively assert that Rogers was armed -- only that he "may be" armed, or was "possibly armed." Moreover, in light of Rogers' two statements of intent to use his gun, which were virtual -17- 17 confessions on the element of possession, the hearsay had only a cumulative effect. We find no plain error. I. Rebuttal Testimony I. Rebuttal Testimony Rogers argues that it was plain error to admit the government's rebuttal testimony regarding his confessions at the police station. On direct examination, Rogers testified that he was under pressure to confess to "all these different cases," and that he "made up [a] story" about breaking into the Sub Hut restaurant. On cross-examination, Rogers stated that he had been questioned about two burglaries at Louisa's, but denied that he had confessed to breaking into Louisa's and taking the safes. The government called Sergeant Jaskolka, one of Rogers' interrogators, as a rebuttal witness. Jaskolka affirmed precisely what Rogers had denied on cross- examination, to wit, Rogers in fact confessed to both burglaries at Louisa's. Not only was there no plain error, this rebuttal testimony was entirely proper. J. Self-incrimination J. Self-incrimination Rogers argues that the district court committed reversible error by instructing him, over his attempt to "plead the Fifth," to answer a question about the burglaries at Louisa's. On cross-examination, the prosecutor asked: "How would you know how much was taken out [of the safes from Louisa's]?" Rogers' counsel objected only on the ground of -18- 18 relevance. Accordingly, we review the instruction to answer only for plain error -- and find none. Rogers certainly did not incriminate himself with respect to the charged offense. Moreover, the government was entitled to ask the question it did because Rogers first denied that he had confessed to the burglaries, and then -- somewhat inconsistently -- stated that he "was asked how much money was taken out of the safes." See United States v. Concemi, 957 F.2d 942, 947-48 ___ ______________ _______ (1st Cir. 1992) (quoting Brown v. United States, 356 U.S. _____ _____________ 148, 154-55 (1958)) (the credibility of a testifying criminal defendant "may be impeached and his testimony assailed like that of any other witness, and the breadth of his waiver is determined by the scope of relevant cross-examination"). K. The Motion for New Trial K. The Motion for New Trial On June 20, 1990, more than a month and a half after the verdict, Rogers filed a motion for new trial under Fed. R. Crim. P. 33, alleging that the government had wrongly withheld a possessed property report (PPR) showing that a box of .32 caliber bullets had been seized from the apartment at 5 Wheelock Street. We review the district court's denial of the motion for a new trial only for abuse of discretion. United States v. Nickens, 955 F.2d 112, 116 (1st Cir.), cert. _____________ _______ _____ denied, 113 S. Ct. 108 (1992). ______ The district court found the evidence of the PPR immaterial because, in the context of the entire record, -19- 19 there is "no reasonable doubt about guilt whether or not the [PPR] is considered." July 13, 1990 Order at 4-5 (quoting United States v. Agurs, 427 U.S. 97, 112-13 (1976)). We ______________ _____ agree that the PPR was not itself material evidence. "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 ______________ ______ (1985). The decisive issue at trial was possession, not how many rounds of ammunition were seized by the police. There is no reasonable probability that the report would have changed the jury's verdict.12 We, however, are gravely concerned by the government's "use" of the report at trial. Although the government did not introduce the report as evidence, it apparently took advantage of its absence from the evidence to _______ discredit Rogers. On cross-examination, the officer who searched the apartment after Rogers' arrest failed to recall "any ammunition . . . being specifically taken." When Rogers testified that the bullet found in his own pocket came from a box of fifty that Glennon carried around with him, the prosecutor insinuated that there were no other bullets:  ____________________ 12. Moreover, the motion for new trial failed to allege that the report was evidence newly discovered after trial -- the _____ only ground upon which the motion could have been timely. See Fed. R. Crim. P. 33. ___ -20- 20 Q. You were here when the other officers testified; right? A. Yes, sir. Q. You didn't hear them saying anything about a box of bullets; right? A. No, I didn't. Q. There was just -- the only bullet that they found was the one in your pocket; right? A. Supposedly. Rogers then referred to the possessed property report, which he believed would have corroborated his story: Supposedly that was the only bullet that was in the apartment . . . . In fact, I know there was a box of 50 that was for the wrong gun . . . . [H]e [Glennon] went out and he had bought another box of 50 and they were sitting right by the gun. Your guess is as good as mine where they went. I've asked the Police Department to produce a copy of the computerized stuff what they says they removed from the apartment and I have not got it yet and it's been over a year. The prosecutor responded: "So the police stole the box of bullets?" And, a moment later: "So the police are covering it up then." The implication is that Rogers had fabricated testimony of a police cover-up. Even if the prosecutor had been ignorant of the report at trial, we would still find his conduct inexcusably negligent. We decline to reverse only because the report and the box of bullets are simply not material to the issue of possession, and the isolated, though improper, cross-examination on a peripheral matter was not ___ -21- 21 "likely to have affected the trial's outcome." United States _____________ v. Manning, 23 F.3d 570, 575 (1st Cir. 1994).13 _______  ____________________ 13. Absent harmful error, we cannot use our supervisory power to deter future prosecutorial misconduct. Id. at 574 ___ n.2 (citing United States v. Hasting, 461 U.S. 499, 506 ______________ _______ (1983)). -22- 22 L. Ineffective Assistance of Counsel L. Ineffective Assistance of Counsel At sentencing, Rogers filed a pro se motion to ___ __ dismiss counsel, alleging the denial of his Sixth Amendment right to effective assistance of counsel, and seeking new counsel for sentencing. Rogers complained that certain witnesses had not been subpoenaed to testify on his behalf at trial. The district court denied the motion. It stated: "I'm going to, for the benefit of the Court of Appeals, find and rule as a matter of law that [counsel] was more than effective within the meaning of Strickland [v.] __________ Washington[,]" 466 U.S. 668 (1984). Rogers not only appeals __________ the denial of the motion to dismiss counsel, which he now construes as a motion for new trial, but also argues that the record is sufficient to show that he received ineffective assistance of counsel.14 The motion to dismiss counsel was correctly denied for the reason stated by the district court. On direct appeal, we will resolve a claim of ineffective assistance not raised in the district court only if the "critical facts are not in dispute and a sufficiently developed record exists." United States v. Daniels, 3 F.3d 25, 26-27 (1st Cir. 1993). _____________ _______ We do so here. From the record and the undisputed facts, it  ____________________ 14. Rogers asks us to reach his claim of ineffective assistance "[w]ithout prejudice to his right to later present the issue to the district court if necessary . . . ." We will assume that his pro se motion to dismiss counsel did not ___ __ already raise this claim in the district court. -23- 23 is clear that defense counsel should have objected to certain parts of the police testimony and to some of the evidence of Rogers' prior crimes. It is equally clear, however, that counsel's performance was not so woeful as to fall below the constitutional norm of Strickland. The failure to make __________ certain evidentiary objections did not strip Rogers of "the very means that are essential to subject the prosecution's case to adversarial testing." Scarpa v. Dubois, No. 93-1795, ______ ______ slip op. at 17 (1st Cir. Oct. 18, 1994) (citing Strickland, __________ 466 U.S. at 688). Moreover, we see no "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. __________ Affirmed. Affirmed. _________ -24- 24