# United States Court of Appeals
## For the First Circuit

No. 07-1541

UNITED STATES OF AMERICA,

Appellee,

v.

DOMINGO A. GONZALEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ernest C. Torres, U.S. District Judge]

Before

Lynch, Chief Judge,
Selya and Lipez, Circuit Judges.

Gordon R. Blakeney, Jr. for appellant.
Robert Clark Corrente, United States Attorney, with whom
Donald C. Lockhart and Adi Goldstein, Assistant United States
Attorneys, were on brief, for appellee.

June 24, 2009

**LIPEZ, Circuit Judge**. A jury found appellant Domingo A. Gonzalez guilty of (1) conspiracy to distribute and to possess with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 846; and (2) possession with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2. Gonzalez was also charged with, but acquitted of, two other counts of an indictment originally brought against six defendants. On appeal, Gonzalez alleges a number of errors in the district court's jury instructions that he contends require reversal. Specifically, he challenges the district court's instructions on the intent required to join a conspiracy, and, with respect to the possession count, constructive possession, Pinkerton liability, and aiding and abetting liability. Finding no error, we reject each of appellant's challenges and affirm his conviction.

**I.**

This case arises out of a drug transaction involving appellant and four other men: Christopher Garcia, Waskar Pena, Alejandro Pujols, and Cornelio Ozorio.[1] These men were the targets of a drug trafficking investigation jointly conducted by the United States Drug Enforcement Administration (DEA) and various Rhode Island law enforcement agencies. An authorized wiretap recorded a December 10, 2005 phone conversation in which Pujols told Pena that

---

[1] Although the indictment also charged another individual, Eduardo Garcia, with several offenses, his involvement in the transaction was peripheral, and is irrelevant for our purposes.

he was planning to go to Lawrence, Massachusetts (the town in which Gonzalez resided), to see if the "thing" was there so that he could "take it to [Pena] right away." That evening, DEA agents intercepted a number of additional calls between Pujols and Pena which, though apparently coded, were interpreted by the agents to concern an imminent drug deal for approximately two kilograms of cocaine. A recorded conversation between Pena and Ozorio, the buyer, corroborated this suspicion. On the same night, Gonzalez also spoke several times with Pujols, but because this information was obtained from written phone records (only Pena's phone line was tapped), there is no evidence of the content of these conversations.

The following day, December 11, 2005, Gonzalez traveled with Christopher Garcia in a Lincoln Town Car from Lawrence to 234 Gallatin Street in Providence, Rhode Island, the home of Waskar Pena. During the car ride, Gonzalez communicated with Pujols several times by phone, both before and after Pujols himself arrived at the Gallatin Street address at around 3:30 p.m. Just after 3:40 p.m., Pujols and Pena were observed by the surveillance team leaving the Gallatin Street house together, getting into a minivan, and driving a short distance to Elmwood Avenue. Sergeant Russell Henry of the Cranston Police Department, one of the members of the surveillance team that day, testified that he watched the minivan containing Pena and Pujols perform a U-turn after reaching

-3-

Elmwood Avenue and return to 234 Gallatin Street followed by the Lincoln Town Car containing Garcia and Gonzalez. The Lincoln parked in the driveway of 234 Gallatin where, according to Providence Detective Joseph Colanduono, Gonzalez and Garcia both "turned towards the rear of the seat and appeared to . . . manipulat[e] something in the rear seat," before exiting the vehicle and entering the house with Pujols and Pena.

Shortly thereafter, Ozorio, the would-be buyer, arrived at 234 Gallatin and went inside. When he came back out a few minutes later, he was stopped by several of the agents, who conducted a pat-down frisk. During this frisk, a bag containing approximately one kilogram of cocaine fell from Ozorio's waistband to the ground. Agents seized the cocaine, arrested Ozorio, and entered the house to execute a search warrant. At first, they discovered only Pena, Pujols, and Garcia in the basement,[2] along with another kilogram of cocaine that had apparently been cut open for testing, a recently-used heat-sealer, packaging materials, and other drug paraphernalia. A short time later, as law enforcement officers were securing the premises and the suspects, Detective Petrillo of the Cranston Police found Gonzalez hiding under a pile of old carpeting and other debris in the basement, a location that agents testified was several feet away from the cocaine and the

---

[2] Several additional individuals were discovered on other floors of the home.

-4-

heat-sealer.  A subsequent search of the Lincoln Town Car revealed a battery-operated secret compartment that had been installed in the back of the passenger seat.  From this compartment, agents seized a scale, a clear plastic bag containing 96.9 grams of cocaine, and a loaded .22 caliber pistol.

Appellant, Garcia, Pujols, Pena, and Ozorio were all named co-defendants in an indictment dated December 14, 2005.  All defendants were charged with Counts I and II.  Count I alleged conspiracy to distribute and to possess with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 846, and was based on the cocaine seized from the basement of 234 Gallatin.  Count II, also based on the cocaine from the basement, alleged possession with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(B) and 18 U.S.C. § 2.[3]  Garcia and Gonzalez were the only two defendants charged in Counts IV and V.  Count IV charged intent to distribute an unspecified quantity of cocaine (the amount in the vehicle's hidden compartment) in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).  Count V was possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c).  All of the other defendants pled guilty before trial. After defendant's four-day trial, the jury returned a guilty verdict on Counts I and II

---

[3] Only Waskar Pena was named in Count III, which alleged possession with intent to distribute 100 grams or more of heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B).

-5-

but acquitted him of the remaining charges.  Gonzalez was sentenced to a 121-month term of imprisonment,[4] to be followed by five years of supervised release.  Gonzalez confines his appeal to four alleged errors in the district court's jury instructions.

## II.

"The scope of our review is shaped by whether petitioner properly raised and preserved an objection to the instructions at trial."  Jones  v. United States, 527 U.S. 373, 387 (1999).  We review a properly preserved instruction to "the form and wording" of an instruction given by the district court for abuse of discretion.  United States v. McFarlane, 491 F.3d 53, 59 (1st Cir. 2007).  "While we would review de novo a claim that an instruction embodied an error of law," we also "review for abuse of discretion 'whether the instructions adequately explained the law or whether they tended to confuse or mislead the jury on the controlling issues.'"  United States v. Silva, 554 F.3d 13, 21 (1st Cir. 2009) (quoting United States v. Ranney, 298 F.3d 74, 79 (1st Cir. 2002)).  A trial court's refusal to give a particular instruction is

---

[4] The combined weight of the cocaine seized from 234 Gallatin was 2.094 kilograms, which carries a base offense level of 28.  See U.S.S.G. § 2D1.1.  However, the district court applied a two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) for the use of a dangerous weapon in connection with the offense, and, based on a finding that Gonzalez deliberately testified falsely at trial, a two-level enhancement for obstruction of justice pursuant to § 3C1.1.  This calculation yielded a net offense level of 32, which, for defendants like Gonzalez with no criminal history, carries a sentencing range of 121-151 months.

reversible error only in the "relatively rare case" in which "the requested instruction was (1) substantively correct; (2) not substantially covered elsewhere in the charge; and (3) concerned a sufficiently important point that the failure to give it seriously impaired the defendant's ability to present his or her defense." United States v. Prigmore, 243 F.3d 1, 17 (1st Cir. 2001).

If, however, a defendant fails to preserve his objection to jury instructions, we review only for plain error. United States v. Riccio, 529 F.3d 40, 46 (1st Cir. 2008). Under this standard, a conviction may only be disturbed if appellant meets the "heavy burden" of proving "(1) that an error occurred; (2) that the error was clear or obvious; (3) that the error affected his substantial rights; and (4) that the error also seriously impaired the fairness, integrity, or public reputation of judicial proceedings." Id. (citations omitted); see also United States v. Olano, 507 U.S. 725, 732 (1993). This standard is so demanding that we have characterized it as "cold comfort to most defendants pursuing claims of instructional error," United States v. Medina-Martinez, 396 F.3d 1, 8 (1st Cir. 2005), because, "[w]hile reversal of a conviction predicated on unpreserved jury error is theoretically possible, . . . [it is] the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." United States v. Weston, 960 F.2d 212, 216 (1st Cir. 1992).

-7-

Two general principles inform our analysis of each of appellant's claims. The Supreme Court has "repeatedly [] cautioned that instructions must be evaluated not in isolation but in the context of the entire charge." Jones, 527 U.S. at 391. Therefore, we must examine the jury charge as a whole in order to determine whether the district judge clearly conveyed the relevant legal principles. In so doing, we must also be mindful that "the district court has considerable discretion in how it formulates, structures, and words its jury instructions." Prigmore, 243 F.3d at 17.

## III.

We offer a brief summary of Gonzalez's defense at trial to help put his claims of error in the jury instructions in context. Gonzalez testified at the trial, as did his mother, sister, and a friend. Gonzalez said that on the day he was arrested, he was simply on his way to Rhode Island in order to visit his sister, who lived in Central Falls, Rhode Island. Pujols had arranged for Garcia, whom he knew to be driving to Rhode Island on that day, to take Gonzalez with him. Gonzalez claimed that he was unaware of the existence and contents of the hidden compartment in Garcia's vehicle, the Lincoln Town Car, or of the nature of the transaction contemplated by the other conspirators. He told the jury that, as far as he knew, Garcia was stopping at his friend Pena's house (whom Gonzalez had never met) so that Pena could show

-8-

Garcia certain renovations that he had recently made to his basement. Gonzalez stated that he had remained on the first floor while the others went down to the basement (and thus had been unaware of the drug transaction taking place downstairs), and that he only ran downstairs in search of a place to hide after he heard the police announce themselves. In essence, Gonzalez claimed that he happened to be in the wrong place at the wrong time.

Gonzalez now alleges four errors in the district court's jury instructions. On Count I, the conspiracy count, Gonzalez alleges error in the district court's charge on "joining the conspiracy and criminal intent." He alleges three separate errors in the district court's instructions on Count II, the substantive offense. Specifically, Gonzalez challenges the court's instructions on constructive possession, <u>Pinkerton</u> liability, and aiding and abetting liability. Because Gonzalez only objected on two of these grounds below, we cannot apply a uniform standard of review to his claims. Accordingly, we discuss each of appellant's claims in turn, identifying the relevant standard of review for each.

## A. Challenges to Instructions on Count I - The Conspiracy Count

Gonzalez challenges the trial court's instructions on joining the conspiracy and criminal intent. He claims generally that the instructions as given omitted the requirement that the defendant "willfully" join the conspiracy. He also advances a more

-9-

specific argument that the district court erred by failing to instruct the jury that proof that a defendant willfully joined in the conspiracy must be based on evidence of his "own words and/or actions."  We address the more specific argument first.

1. The "Words and Actions" Instruction

This argument rests on appellant's contention that, as a matter of law, a conspiracy conviction "requires that a defendant's 'membership in a conspiracy be proved on the basis of his own words and actions (not on the basis of mere association or knowledge of wrongdoing).'"  United States v. Richardson, 225 F.3d 46, 53 (1st Cir. 2000) (quoting United States v. Cintolo, 818 F.2d 980, 1003 (1st Cir. 1987)).  Therefore, he alleges reversible error in the court's failure to give the instruction he requested, which was taken from the Pattern Criminal Jury Instructions for the First Circuit[5] and which stated that "proof that [defendant] willfully joined in the agreement must be based on evidence of [his/her] own

---

[5] Although pattern jury instructions may be used as a guide, "[b]y their terms, those instructions are precatory, not mandatory." United States v. Gomez, 255 F.3d 31, 39 n.7 (1st Cir. 2001); see also United States v. Tse, 375 F.3d 148, 157-58 (1st Cir. 2004) (quoting the Preface to the Pattern Instructions for the proposition that, although the Instructions may be helpful to craft a jury charge in a particular case, "it bears emphasis that no district judge is required to use the pattern instructions, and that the Court of Appeals has not in any way approved the use of a particular instruction").

words and/or actions."[6]  The parties agree that our review of this claim is for abuse of discretion.

Gonzalez was convicted of conspiracy under 21 U.S.C. § 846, which requires proof "that a conspiracy existed and that a particular defendant agreed to participate in it, intending to commit the underlying substantive offense . . . ."  United States v. Sepúlveda, 15 F.3d 1161, 1173 (1st Cir. 1993).  Gonzalez is thus clearly correct that the law requires the government to prove -- and the jury to find -- more than "mere association or knowledge of wrongdoing."  However, his argument of error in the court's failure specifically to incorporate the "words and actions" instruction is meritless, even under the standard of review applicable to this issue because of defendant's contemporaneous objection.  In fact, in Richardson, which appellant cites for the proposition that the "words and actions" instruction is a "correct statement of the law," we specifically rejected a challenge based on the trial

_____

[6] The requested instruction read, in relevant part:

Proof that [defendant] willfully joined in the agreement must be based upon evidence of his/her own words and/or actions.  You need not find that defendant agreed specifically to or knew about all the details of the crime, or knew every other co-conspirator or that he/she participated in each act of the agreement or played a major role, but the government must prove beyond a reasonable doubt that he/she knew the essential features and general aims of the venture.

Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 4.03 (1998), available at http://www.med.uscourts.gov/practices/crpji.97nov.pdf.

-11-

court's deviation from this language.  225 F.3d at 53-54.[7]
Although we acknowledged that the court's deviation from the
Pattern Instruction -- the same instruction that Gonzalez requested
here) -- created an "arguable ambiguity," we found that any such
ambiguity was cured by additional instructions, and that the charge
as a whole "correctly informed the jury that a guilty
verdict . . . had to rest on evidence of [defendant's] own words or
actions."  Id. at 54.  We pointed to portions of the charge that
"effectively made the point that [defendant's] guilt could only be
established by his own words or actions," such as (1) the court's
explicit warning that "mere association" did not establish
membership in a conspiracy; (2) its instruction that the government
had to prove both intent to agree and intent to commit the
underlying crime, and, (3) "most significantly," the following:

> no defendant may be found guilty for the acts
> of others unless you find that that defendant
> himself engaged in criminal acts . . . .  The
> fundamental question is whether or not through
> acts and statements of his own, reflected both
> in those acts and statements and in the other
> evidence in this case, the defendant has been
> shown beyond a reasonable doubt to have
> engaged in the crime that is alleged.

Id.
        In this case, as in Richardson, the court warned that
"[t]he fact that various persons may have engaged in similar

------

[7] Instead of following the pattern instructions verbatim and
stating that "[p]roof that defendant willfully joined in the
agreement must be based upon evidence of his/her own words and/or
actions," the court substituted the word "may" for "must."

-12-

conduct or that they may have associated with one another . . . are factors that you can consider, but [] don't, by themselves, prove a conspiracy." Like the jury in Richardson, the jury here was also told that the government had the burden to prove that Gonzalez both "voluntarily participated in the conspiracy or was a member of the conspiracy" (i.e., had intended to agree) and that "the defendant intended that the offense . . . be committed" (i.e. intent to commit the crime). Finally, the court repeatedly emphasized that the key element of a conspiracy was a mutual agreement to commit unlawful acts, and explicitly stated that the defendant must have been a "party to that mutual agreement or understanding." The court stated that "[t]he essence of conspiracy is participating in a plan or a scheme to do something unlawful." The charge, taken as a whole, adequately conveyed the idea that Gonzalez must have personally and intentionally joined the agreement, which is all the law requires. The district court "is not required to parrot the language proffered by the parties." United States v. Glaum, 356 F.3d 169, 178 (1st Cir. 2004).

        2. "Willfully" Joining the Conspiracy

        Gonzalez asserts that we must review for abuse of discretion his claim that the court erred by failing to convey to the jury the requirement that he "willfully" join the conspiracy. The government counters that because Gonzalez only specifically objected to the court's refusal to adopt his suggested "words and

-13-

actions" language, we must review this "more general" complaint as to willfulness for plain error only. We need not split hairs over the appropriate standard of review for this issue. There was no error at all in the trial court's instructions.

Under our law, "the requisite intent" needed for a conspiracy conviction is that "the defendant intended to join in the conspiracy and intended the substantive offense to be committed." United States v. Henderson, 320 F.3d 92, 110 (1st Cir. 2003). That is the meaning of "willfully" in this context, and the court was not obligated to mention "willfulness" as an independent requirement. Indeed, appellant's own requested jury instruction defines willfulness in this way: "To act 'willfully' means to act voluntarily and intelligently and with the specific intent that the underlying crime be committed -- that is to say, with bad purpose, either to disobey or disregard the law -- not to act by ignorance, accident, or mistake." As we have explained, the court's instruction, as given, amply conveyed the intent requirement for a conspiracy conviction.

**B. Challenges to Instructions on Count II - The Substantive Offense**

Gonzalez lodges three challenges to the instructions relating to Count II, finding fault with an instruction relating to each of the three potential bases for finding him guilty of the substantive offense. Gonzalez challenges the adequacy of the court's instruction on constructive possession, the instruction on

<u>Pinkerton</u> liability for the criminal conduct of co-conspirators, and the aiding and abetting instruction.

1. Constructive Possession

Gonzalez argues that the trial court erred by (1) omitting from its instruction an element of constructive possession that requires a defendant to act "knowingly," and (2) failing to inform the jury that a defendant must have "dominion" over the object being constructively possessed, a concept that appellant characterizes as "the recognized right or authority, in his criminal milieu, to exercise control over [the item]." The government contends that the instructions as given clearly conveyed to the jury the principle that any kind of possession, either actual or constructive, must be knowing and intentional, and that it was entirely appropriate for the court to use the word "control" instead of "dominion." The parties agree that our review is for plain error.

The court's instruction stated, in relevant part:

[The relevant statutory section] says "it shall be unlawful for any person <u>knowingly or intentionally</u> to distribute, or to possess with the intent to distribute, a controlled substance . . . .

The second thing that the Government must prove is that Mr. Gonzalez had the <u>specific intent</u> to distribute that cocaine, not only possessed it, but he had the intent to distribute it. And the third thing the Government has to prove is that, in doing so, Mr. Gonzalez <u>acted knowingly and intentionally</u>. . . .

-15-

When a defendant has indirect power and control over a substance, the defendant may be said to have constructive possession over that substance. Even though the substance is not on his person or within his immediate reach, if he has the <u>ability to exercise power and control over it</u>, he has constructive possession of that substance. Indirect control may exist when the object or substance is readily accessible to the defendant, and he has <u>the power and ability and intention to exercise control over it.</u> . . .

As I've said, in order to establish possession, there has to be evidence that the defendant had <u>both the intention and the power to exercise control over the substance</u>, either by himself or in conjunction with others.

(emphasis added).

### a. Omission of the word "knowingly"

Defendant's argument that the court erred by omitting the word "knowingly" in its constructive possession instruction is meritless. As the excerpts above demonstrate, the court twice used the phrase "knowingly and intentionally" in describing the elements of the offense, and proceeded to elaborate on the meaning of "possession." The fact that the court did not use the word "knowingly" specifically to modify its description of constructive possession is insufficient to establish error under these circumstances. The court's instructions were clear that, regardless of how the government established possession, it still had to prove that it was knowing and intentional. Moreover, the court's description of constructive possession specifically included the requirement that defendant have the "power, ability,

-16-

and <u>intention</u> to exercise control over [the substance]" (emphasis added). It is unclear to us how a defendant could intentionally exercise control over an object without doing so "knowingly."

Our decision on this issue comports with our holding in <u>United States</u> v. <u>Hallock</u>, 941 F.2d 36 (1st Cir. 1991). There, we rejected the defendant's argument that the district court erroneously omitted the knowledge and intent elements of constructive possession, concluding that the court had "elsewhere made abundantly clear to the jury that proof of the defendant's knowledge and intent was required to convict." <u>Id.</u> at 42. We also noted that Hallock had been charged with possession with intent to distribute, but did not argue on appeal that "the jury misunderstood the 'intent to distribute' part of the crime." <u>Id.</u> at 43. Thus, his argument -- the same one Gonzalez now advances -- was logically inconsistent: under his theory, "the jury found he possessed [certain containers] without knowing that they contained cocaine, but went on to find that he intended to distribute the cocaine that was in them." <u>Id.</u>

b. Failure to use the word "dominion"

We also reject appellant's contention that by failing to use the word "dominion," the court omitted an essential element of the offense. We have stated generally that "[w]ithin wide margins, the district court maintains discretion in the precise manner that it explains legal concepts to the jury." <u>McFarlane</u>, 491 F.3d at

-17-

59. More specifically, we have recognized that the definition of constructive possession may or may not include "dominion" as a separate concept, stating that "'[c]onstructive possession' is commonly defined as the power and intention to exercise control, or dominion and control, over an object not in one's 'actual' possession." United States v. Zavala Maldonado, 23 F.3d 4, 7 (1st Cir. 1994) (emphasis added). We have even rejected a defendant's contention that "the district court [improperly] used the conjunction 'or' rather than 'and'" in the phrase "dominion or control," noting that "[a]t times, we have used the conjunctions 'and' and 'or' interchangeably" in this very context. United States v. Rogers, 41 F.3d 25, 30 & n.5 (1st Cir. 1994). In Rogers, we explained that, because dominion is generally defined to include the concept of control, the instruction properly conveyed to the jury the notion that there could have been no conviction absent a finding of control. Id. at 30. The same is true here. The court emphasized that, to justify a finding of constructive possession, appellant must have had the power and ability to exercise control over the substance at issue. We discern no meaningful difference between the instruction as given and one which would have included the word "dominion."

2. Liability for Criminal Conduct of Co-conspirators

Gonzalez argues that the court's instruction on the liability of members of a conspiracy for substantive offenses

committed by their co-conspirators (i.e., <u>Pinkerton</u>[8] liability) was confusing and would have caused the jury to believe that it could find liability for the criminal conduct of co-conspirators even without sufficient proof of the underlying offense. He claims that the confusion arose because the court first told the jury that it would explain the law regarding liability for the underlying substantive offense, but instead went on to describe the requirements for a conspiracy conviction.

The court stated:

> In order to find that someone who's guilty of conspiracy to commit an offense is also guilty of the offense, the government has to prove five things . . . Third, [the government] has to show that the offense was committed pursuant to the conspiracy . . . .
> Now, I know it's a little bit confusing and you may be asking yourselves what's the difference between finding someone guilty under the aiding and abetting theory and finding someone guilty under the conspiracy theory. Although the two offenses are similar in some respects, there is a <u>big difference</u> between finding somebody guilty on what others have done based on the aiding and abetting theory as opposed to finding someone guilty of a substantive offense based on what co-conspirators have done. <u>The difference is this: proof of aiding and abetting, as I told you earlier, requires evidence that the crime was actually committed by someone.</u>

---

[8] <u>See</u> <u>Pinkerton</u> v. <u>United States</u>, 328 U.S. 640 (1946). "[U]nder the <u>Pinkerton</u> doctrine, a defendant can be found liable for the substantive crime of a coconspirator provided the crime was reasonably foreseeable and committed in furtherance of the conspiracy." <u>United States</u> v. <u>Vázquez-Botet</u>, 532 F.3d 37, 62 (1st Cir. 2008).

> The defendant can't be guilty of aiding and abetting an offense that was never committed, whereas, <u>proof of a conspiracy does not require a showing that the unlawful act that was the object of the conspiracy was committed</u>.

(emphasis added). This instruction, Gonzalez contends, would lead the jury to believe that he could be found guilty of the substantive offense (Count II) without proof that the offense had been committed.

The government counters that the court correctly stated the applicable law: that in order for the jury to find <u>Pinkerton</u> liability, the government had to prove five elements, one of which was "that the offense was committed pursuant to the conspiracy." Moreover, the court had already given a "lucid" description of the five elements of liability, and said repeatedly (at least six times) that proof of all five was required to convict Gonzalez. Our review is for plain error.

We agree with appellant that the court's statement that "proof of a conspiracy does not require showing that the unlawful act that was the object of the conspiracy was committed" was confusing. This statement is accurate only as to criminal liability for the offense of conspiracy, which is not what the court said it was discussing. Nevertheless, we reject appellant's claim of plain error under the circumstances. The Supreme Court has held that "instructions that might be ambiguous in the abstract can be cured when read in conjunction with other instructions."

-20-

<u>Jones</u>, 527 U.S. at 391 (citations omitted); <u>see</u> <u>also</u> <u>United States</u> v. <u>Nishnianidze</u>, 342 F.3d 6, 16 (1st Cir. 2003) (finding no plain error in instruction which incorrectly characterized the applicable standard as a subjective one but "later clarified" that the government bore the burden of proving that defendant's statement was objectively threatening).

Despite the original ambiguity of the court's statement, the court cured the ambiguity by explicitly distinguishing in the next two sentences between liability for conspiracy and liability for the substantive underlying offense. The court stated: "You can be guilty of conspiracy even though the act was not committed. Obviously, you can't be guilty of the act that was the object of the conspiracy unless the act was committed." Given this language, it is "highly unlikely" that the potential ambiguity cited by Gonzalez, "when read in the context of an otherwise correct . . . instruction, misled the jury . . . . This is especially so given the clarifying instruction that immediately followed the passage to which [defendant] objects." <u>United States</u> v. <u>Bailey</u>, 405 F.3d 102, 110 (1st Cir. 2005) (holding that an extraneous reference to liability for "failure to act" -- a theory the government had not argued -- in an otherwise comprehensive, seven-paragraph instruction on aiding and abetting was not plain error, particularly in light of subsequent clarification).

-21-

Furthermore, in explaining to the jury that the defendant could be found liable for the substantive offense under one of the theories -- as a principal, as an aider and abettor, or under a Pinkerton theory -- the court eliminated any ambiguity in its earlier instructions by emphasizing the fact that a conviction based on a Pinkerton theory required the government to prove the five elements he had already set forth. ("You could find him guilty of the 500 gram charge if he actually possessed the 500 grams with intent to distribute, or if he aided and abetted others in doing so, but you can't find him guilty on the basis that he is guilty of conspiracy unless you find that these five things have been shown.")

3. Aiding and Abetting

The court instructed the jury that, in order to establish aiding and abetting liability, the government had to prove three elements. First, it had to show "that at least one of [the substantive offenses which Gonzalez was accused of aiding and abetting] was actually committed." The court continued:

> The second thing the Government has to prove is that this defendant assisted in the commission of that crime or caused it to be committed. And third, the Government has to show that the defendant intended to assist in the commission of that crime or to cause it to be committed. . . . [T]he Government doesn't have to prove that the defendant personally committed the crime, what it must prove is that someone committed the crime, and that the defendant willfully did something to assist in the commission of that crime.

-22-

Now, I said "willfully." Assisting in the commission of a crime is willful if it's done knowingly and voluntarily and with the intent to help facilitate the commission of the crime. And again, mere presence where a crime is committed is not by itself sufficient to prove that a defendant is guilty of aiding and abetting. It's a factor you can consider, but by itself it doesn't prove that the defendant aided and abetted. There must be evidence that the defendant did something to facilitate the commission of a crime.

In other words, putting it about as briefly as I can, the defendant must be a participant in the crime and not merely a spectator.

Gonzalez argues that this instruction failed to require a jury finding that he consciously shared the principal actors' knowledge of the underlying criminal act. He asserts that this error impermissibly allowed the jury to convict him without evidence of specific intent. In support of this argument, he cites the following instruction on aiding and abetting, which he timely proposed, and which is drawn substantially from the Pattern Criminal Jury Instructions for the District Courts for the First Circuit:

To "aid and abet" means intentionally to help someone else commit a crime. To establish aiding and abetting, the government must prove beyond a reasonable doubt that (1) someone else committed the charged crime and (2) that [defendant] consciously shared the other person's knowledge of the underlying criminal act, intended to help him/her, and [willfully] took part in the endeavor, seeking to make it succeed.

[Defendant] need not perform the underlying criminal act, be present when it is performed, or be aware of the details of its

-23-

execution to be guilty of aiding and abetting. But a general suspicion that an unlawful act may occur or that something criminal is happening is not enough. Mere presence at the scene of a crime and knowledge that a crime is being committed are also not sufficient to establish aiding and abetting.

See Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 4.02 (1998), available at http://www.med.uscourts.gov/practices/crpji.97nov.pdf. Because this is one of appellant's preserved objections, we review his claim that the instructions embodied an error of law de novo and his claim as to the form of instruction for abuse of discretion.

As we have already noted, the Pattern Instructions, "although often helpful, were not prepared or mandated by this court," United States v. Urciuoli, 513 F.3d 290, 300 n.7 (1st Cir. 2008), and "[t]here is no single prescribed way to get the aiding and abetting concept across." Id. at 300. In order to establish aiding and abetting liability, the government must prove, first, that the principal committed the substantive offense charged, and second, that the accomplice "became associated with [the principal's criminal] endeavor and took part in it, intending to assure its success." United States v. Matos-Quinones, 456 F.3d 14, 20 n.5 (1st Cir. 2006) (quoting United States v. Spinney, 65 F.3d 231, 234-35 (1st Cir. 1995)). While we have acknowledged that "[t]he challenge in aiding and abetting cases is framing [the intent element] for the jury," id., we have explicitly declined to

-24-

require the 'shared' intent language found in some of our opinions and in the First Circuit Pattern Jury Instructions. See Uricuoli, 513 F.3d at 299. Instead, we have observed that "a showing that the defendant consciously shared the principal's knowledge of the underlying criminal act, and intended to help [him]" is one way for the government to fulfill its burden to show that "a defendant participated in the venture and sought by his actions to make it succeed." United States v. Geronimo, 330 F.3d 67, 73 (1st Cir. 2003) (quoting United States v. Hernandez, 218 F.3d 58, 65 (1st Cir. 2000)).

Here, the court's instruction certainly sufficed to inform the jury that Gonzalez could only be guilty of aiding and abetting if he had "'willfully' [done] something to assist in the commission of [the] crime." The court further stated that assistance in the commission of a crime was "willful" if it was "done knowingly and voluntarily and with the intent to help facilitate the commission of the crime." To the extent that the jury's verdict rested on aiding and abetting, it thus reflects its conclusion that Gonzalez knowingly and voluntarily assisted in the commission of a crime, with the intent to facilitate the criminal conduct. There is no substantive distinction between this formulation and the language in defendant's proposed instructions that requires the accused to "consciously share" the principal's intent. Appellant's argument that the failure to use this

particular phrase permitted the jury to convict the defendant of aiding and abetting liability without finding the requisite intent is unfounded.

**<u>Affirmed</u>**.